### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

**Earl C. Rutledge**

       **Plaintiff,**

**v.**                              **Case No. 3:03-CV-201**
                                          **Judge Thomas Rose**

**UNUM Insurance Company,**

       **Defendant**

---

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT BASED ON THE ADMINISTRATIVE RECORD, DOC. 11, DENYING PLAINTIFF'S MOTION FOR JUDGMENT BASED ON THE ADMINISTRATIVE RECORD, DOC. 15, AND TERMINATING CASE.**

---

The Court decides this matter following a review of an administrative record as provided by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (2005). Plaintiff, Earl C. Rutledge, is a former employee of Lowe's Companies. As an employee of Lowe's Companies, Defendant, UNUM Insurance Company, issued medical insurance to Plaintiff through a group long-term disability insurance policy. Rutledge seeks renewal of payment of long-term disability benefits and compensation for missed payments. Because UNUM was within its discretion to consider Mr. Rutledge no longer disabled due to the change in the policy's definition of "disabled" after 24 months of benefits, the Court grants Defendant's Motion for Judgment on the Administrative Record, Doc. 11, and denies Plaintiff's Motion for Judgment on the Administrative Record, Doc. 15.

1

## I.     PROCEDURAL HISTORY AND CLAIM HISTORY

Employer Lowe's Companies provided Plaintiff, Mr. Rutledge, an UNUM long-term disability policy.  (UACL00392-414).  Mr. Rutledge submitted a claim for short-term disability benefits on or about March 15, 2000.  (UACL00001-03).  UNUM approved this through May 29, 2000.  (UACL00033, UACL00346-47).  On June 1, 2000, UNUM approved Mr. Rutledge's claim for long-term disability benefits and backdated the claim to May 23, 2000.[1]  (UACL00050-52, UACL00299-302).  Mr. Rutledge received these benefits until May 22, 2002 for a total of 24 months.  (UACL00196-198).  On May 22, 2002, UNUM stopped paying Mr. Rutledge his long-term disability benefits.  (UACL00196-198).  In January, 2002, five months before his benefits ended, Mr. Rutledge appealed the decision to discontinue benefits.  (UACL00208-210).  UNUM informed Mr. Rutledge by letter it determined that its original decision not to extend benefits beyond May 22, 2002 was appropriate.  (UACL00218-219).  Mr. Rutledge's attorney sought another review of the decision, which was denied on January 20, 2003.  (UACL00221-223).

ERISA plan beneficiaries must exhaust all administrative remedies prior to bringing a suit for an individual claim.  *Hill v. Blue Cross & Blue Shield*, 409 F.3d 710, 717 (6th Cir. 2005).  The policy does not describe any procedures a claimant must take when appealing an UNUM decision to deny benefits.  The proof of claim exhausted all of Mr. Rutledge's administrative remedies, and the appeal of the decision to deny benefits was an additional administrative step he took.  (UACL00208-210, UACL00218-219).   Therefore, Mr. Rutledge exhausted all of his administrative options as required.

On June 6, 2003, Earl C. Rutledge filed a complaint with this Court naming UNUM Life

---

[1] UNUM approved long term benefits on June 1, 2000 for the period starting May 23, 2000, so the 24 month period ended May 22, 2002.  (UACL00050-52).

Insurance Company as the defendant.  Doc. 1.  His complaint alleged failure to pay long-term

disability benefits.  Doc. 1.  UNUM filed an answer on August 18, 2003.  Doc. 4.

Defendant filed a Motion for Judgment on the Administrative Record on April 26, 2004.

Doc. 11.  Plaintiff filed his own Motion for Judgment on the Administrative Record on April 29,

2004.  Doc. 15.  Defendant UNUM responded in opposition to Plaintiff's Motion for Judgment

of the Administrative Record on June 1, 2004.  Doc. 16.

## II.      JURISDICTION

This Court has jurisdiction over the subject matter of this complaint.  *See* 29 U.S.C. §

1132(e)(1) (2005).  Exclusive jurisdiction lies with the district courts of the United States for

civil actions brought under ERISA by a "participant" or "beneficiary" of an ERISA covered

benefit plan.  *Id.*  A "participant" or "beneficiary" can bring a civil action to recover benefits he

believes are due to him.  29 U.S.C. § 1132(a)(1)(B).  In this case, Mr. Rutledge qualifies as a

"participant" or "beneficiary" of UNUM's ERISA covered benefit plan.  Mr. Rutledge brings a

civil action to recover benefits he believed were due to him.  In addition, Mr. Rutledge exhausted

all of his administrative options prior to bringing this suit.  Therefore, proper jurisdiction over

this matter lies with this court.

## III.     GOVERNING LAW AND CONTRACT TERMS

ERISA governs the UNUM Group Long-term Disability Insurance Policy because it is a

"plan" under ERISA.  *See* 29 U.S.C. § 1002.  Mr. Rutledge qualifies as a "participant" under

ERISA.  *See* 29 U.S.C. § 1002(7).  Mr. Rutledge seeks to enforce his rights and to recover

benefits due to him regarding payment of long-term disability benefits under the UNUM plan, as

allowed by ERISA:

> A civil action may be brought... by a participant or beneficiary...to recover benefits due to [him] under the terms of [his] plan, to enforce [his] rights under the terms of the plan, or to clarify [his] rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

The insurance policy provides a monthly benefit when:

> ... the Company receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of the disability if the insured gives to the company proof of continued:
> 1.    Disability; and
> 2.    Regular attendance of a physician, unless proof is given that the insured has reached his maximum point of recovery.

(UACL00404). The insured must give proof upon UNUM's request and at the insured's

expense. (UACL00404). The Policy defines "disabled" or a "disability" as when:

> 1.    the insured cannot perform each of the material duties of his regular occupation; and
> 2.    after benefits have been paid for 24 month, the insured cannot perform each of the material duties of *any* gainful occupation for which he is reasonably fitted by training, education or experience; or
> 3.    the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
>      a.    performing at least one of the material duties of his regular occupation or another occupation on a part-time or full time basis; and
>      b.    earning currently at least 20% less per month than his indexed pre-disability earning due to that same injury or sickness.

(UACL00406).

So, the policy considers a person disabled differently depending on whether the benefits

have been paid for more or less than 24 months. (UACL00406.) To be considered disabled

4

under part one the claimant must show he cannot perform each of the material duties of his regular occupation during the first 24 months of benefit payout, but after 24 months part two demands the insured to prove he cannot perform the material duties of "any gainful occupation" for which he is reasonably fitted.  (UACL00406.)

## IV.    STANDARD OF REVIEW

The Court reviews the facts of this case solely on the basis of the administrative record before UNUM at the time it made its decision to deny the Plaintiff's benefit claim.  *Moon v. UNUM Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005).  When a benefit plan, challenged under § 1132(a)(1)(B), gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Court must apply the arbitrary and capricious standard of review.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

The plan must contain "a clear grant of discretion to the administrator to determine benefits or interpret the plan."  *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). A clear grant of discretion to the administrator requires a plan term giving the plan administrator a "right to require[,] as part of the proof of claim[,] satisfactory evidence."  *Perez,* 150 F.3d at 557.

In this case, the Policy gives the claims administrator the discretion to determine eligibility for benefits.  The Policy terms give the administrator the right to require proof that an insured is disabled before he will authorize benefits and "the proof must be given upon request and at the insured's expense." (UACL00404).

If the court determines the Policy gives a clear grant of discretion to UNUM's plan administrator, the Court will reverse the claims administrator's decision only if it was arbitrary

5

and capricious. *Firestone*, 489 U.S. at 115.  As long as the claims administrator's decision had a rational basis in light of the information available at the time and the policy's provisions, the decision was not arbitrary and capricious and will be upheld.  *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991).

## V.    FACTUAL BACKGROUND

Lowe's Companies employed Mr. Rutledge as a Customer Service Representative. (UACL00186).  Lowe's provided him with a long-term disability insurance plan through a policy issued by UNUM.  (UACL00392-414).  Mr. Rutledge submitted a claim for short disability benefits on March 15, 2000. (UACL00001-03).  Plaintiff's doctor, Dr. Maraboyina indicated the basis of the claim was coronary artery disease and his symptoms were "chest pain, unstable angina."  (UACL0003).  In the "Physical Impairment" section of the short term disability form, Plaintiff's doctor indicated that Plaintiff was "capable of clerical/administrative (sedentary*) activity."  (UACL0003).  In the "Mental Impairment" section of the form, Dr. Maraboyina indicated that "patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)."  (UACL0003).  UNUM approved and paid this short-term claim through May 29, 2000.  (UACL00033, UACL00346-47).  Mr. Rutledge had a history of heart problems including a coronary artery bypass surgery in 1993, a cardiac catheterization in 1999, and a repeat heart catheterization in 2000.  (UACL00027).

On June 1, 2000, UNUM approved Mr. Rutledge's claim for long-term disability payments.  (UACL00050-52, UACL00299-302).  At the time of approval, UNUM's Tracy Oliver reviewed Dr. Maraboyina's findings and made the comment that it may be possible for Mr. Rutledge to perform sedentary work "at change in definition" with medical management.

(UACL00045).  In 2000, Dr. Maraboyina placed Mr. Rutledge on "maximal medical therapy." (UACL00027).  Mr. Rutledge received long-term benefits until May 22, 2002 for a total of 24 months.  (UACL00196-198).

On July 17, 2001, a UNUM cardiologist, Costas T. Lambrew, M.D., reviewed Mr. Rutledge's file to determine his functional capacity.  Dr. Lambrew reviewed notes of Mr. Rutledge's cardiologist, Dr. Maraboyina, dated May 2, 2000 (UACL00085-86), June 12, 2000 (UACL00094), October 16, 2000 (UACL00095), and February 14, 2001 (UACL00096).  The most recent notes, from  February 14, 2001, indicated that Mr. Rutledge had a history of coronary artery bypass surgery in 1993, a known case of hypercholesterolemia, hypertension, and stenting of the right coronary vein graft with subsequent total occlusion of the same. (UACL00096).  The notes indicated that Plaintiff experienced intermittent chest pain, some shortness of breath, and no palpitations or dizzy spells.  (UACL00096).  The notes further indicated that Mr. Rutledge experienced no cough or hemoptysis and that his gastrointestinal and genitourinary systems were negative. (UACL00096).  Dr. Lambrew also reviewed an ECG dated February 14, 2000.  (UACL00098).  The ECG states to "consider left atrial enlargement" and that it was an "otherwise normal ECG." (UACL00098).

 In addition, Dr. Lambrew reviewed a Social Security benefits denial letter dated June 22, 2001 (UACL00102-104).  The Social Security benefits denial letter used a similar definition of "disability" to the definition in the UNUM's Policy after benefits have been paid for 24 months. (UACL00102-104).  The Social Security benefits denial letter reviewed by Dr. Lambrew states that Mr. Rutledge has a severe condition but he was able to lift a light amount, walk, stand, and sit for about six hours in a normal work day.  (UACL00102-104).  The letter further stated that

7

he had the ability to return to customer service representative type of work. (UACL00102-104).

Based upon his review of these records, Dr. Lambrew observed that there was no stress test performed, and there was no evidence that pain was related to activity or that the chest pain was cardiac. (UACL00109). Dr. Lambrew concluded on July 18, 2001 that the relationship of Mr. Rutledge's complaint to a cardiac problem was "not documented." (UACL00109).

Dr. Lambrew suggested that Plaintiff obtain a "[d]escription of symptoms by [attending physician], relating them to activity, and description of [Plaintiff's] activity each day and suggested a functional stress test. (UACL00109). On August 1, 2001, Plaintiff agreed to schedule a stress test with his cardiologist and have the results forwarded to UNUM. (UACL00260). UNUM received a copy of the results on September 21, 2001 of the stress test performed on August 22, 2001. (UACL00251-254).

The pharmacological stress test showed, "a small sized moderate reversible perfusion defect[2] of the posterobasal wall[3] suggestive of ischemia[4]" and that the "technical quality of the study is poor." Dr. Bhaskar, who interpreted the test, noted: (1) a small region of posterobasal ischemia; (2) normal wall motion; and (3) ejection fractions of 63%. (UACL00171).

On September 21, 2001, Dr. Lambrew reviewed Plaintiff's records again, including a medical review dated July 17, 2001, (UACL00109), an office visit note dated August 2, 2001 (UACL00160-161), a letter dated August 30, 2001, (UACL00169), and a pharmacologic stress perfusion imaging study dated August 22, 2001. (UACL00171); *see generally* (UACL00173,

_____

[2] Perfusion defect is a defect in the passage of fluid through the blood vessels of the heart. Dorland's Illustrated Medical Dictionary 987 (John P. Friel ed., W.B. Saunders Co. (26th ed. 1981).

[3] Posterobasal wall refers to the posterior base of the wall of the heart. *Id*. at 156, 1057.

[4] Ischemia is a deficiency of blood due to a constriction or obstruction of blood vessels. *Id*. at 681.

UACL00182). The August 30, 2001 letter reviewed by Dr. Lambrew, from Dr. Maraboyina, indicated Plaintiff, "would get symptomatic with routine activities in spite of only right coronary distribution being involved in the coronary disease process." (UACL00169). The letter further indicated the August 22, 2001 "pharmacological sestambi stress test showed a perfusion defect in the posterobasal wall consistent with an old infarction. Ejection fractions were in the normal range." (UACL00169).

Dr. Lambrew concluded in his September 21, 2001 report that Mr. Rutledge had occasional chest pain, no ischemic or perfusion imaging study, claimant's functional capacity had not been addressed adequately, and that he was capable of sedentary and light work and was unsure about capacity for medium or heavy work. (UACL00173, UACL00182). He suggested to "do the treadmill for functional capacity and supply information on level of activity." (UACL00173, UACL00182).

UNUM then asked GENEX to perform a Transferable Skills Analysis ("TSA") on September 26, 2001 because of Dr. Lambrew's determination that he was capable of light or sedentary work. (UACL00187-188). The TSA revealed that Plaintiff's education and work history afforded him a number of employment options, including at least two of his previous positions (Furniture Rental Consultant and Accounting Clerk). (UACL00183-193).

Effective May 22, 2000, UNUM stopped paying long-term disability benefits to Mr. Rutledge because it determined that Mr. Rutledge did not satisfy the definition of disabled that applies after benefits have been paid for 24 months. (UACL00196-198). UNUM informed Mr. Rutledge of its decision by letter dated October 24, 2000. (UACL00196-198). The letter listed seven occupations Plaintiff was qualified for that were either sedentary occupations or

9

occupations that required only light work. (UACL00196-198).  Additionally, in the letter UNUM offered to refer Plaintiff to its vocational department for assistance finding a new occupation. (UACL00196-198).  UNUM also called him on November 7, 2001 to offer its assistance in helping find a new occupation, but Mr. Rutledge declined the offer.   (UACL00242, UACL00442).  UNUM offered this assistance once again on January 4, 2002, but he declined the assistance once again. (UACL00241).  Mr. Rutledge confirmed at that time that UNUM had all of his medical records. (UACL00241).

 In January, 2002, Mr. Rutledge appealed the decision not to continue benefits, and UNUM determined its original decision not to extend benefits beyond May 2002 was appropriate.  (UACL00208-210, UACL00218-219).  Mr. Rutledge's appeal stated: (1) his doctor said his medical condition had not changed since he filed; (2) his doctor said he remained permanently and totally disabled; and (3) UNUM's October 24, 2001 letter set forth two incorrect facts: (a) he did not discontinue beta blockers 72 hours prior to the stress test and (b) he had a heart attack. (UACL00210.)

UNUM informed Plaintiff on April 10, 2002 that it had determined that its original decision not to extend benefits to Plaintiff beyond May 22, 2002 was appropriate. (UACL00218-219).  The letter explains the change in definition of "disability" after 24 months required him to be unable to perform "any gainful occupation" and that he no longer met that definition of "disability" after May 22, 2002. (UACL00218-219).  Plaintiff's attorney sought another review of this decision in which the review was denied on January 20, 2003. (UACL00221-223).

**VI.    ANALYSIS**

10

The issue in this case is whether UNUM's denial and discontinuation of Plaintiff's long-term disability benefits were arbitrary and capricious in light of the applicable policy provisions and the information in support of Plaintiff's claim presented to UNUM at the time of its decision. The decision was not arbitrary and capricious if it had a rational basis in light of the information UNUM had at the time. *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991). The policy provisions gave the plan administrator discretion in making plan decisions and put the burden of proving a claim on the claimant. (UACL00404). In addition, the policy provided a change in the definition of "disability" at the end of 24 months of benefit payment. (UACL00406). This change in definition narrows the scope of eligibility for long-term benefits. (UACL00406).

Based on the policy provisions and the administrative record available to UNUM at the time of its decision, the Court finds UNUM had a rational basis so the decision was not arbitrary and capricious. Mr. Rutledge provided no satisfactory proof that he could not perform "any gainful occupation" under the post 24 month definition of disability. UNUM thoroughly reviewed the information in its possession at the time of the decision. Mr. Rutledge's contentions to the contrary, including: (1) he was not physically examined by a UNUM doctor; (2) Ms. Oliver's statement that he may be able to do light work at the end of the 24 month period; and (3) the belief that UNUM's suggestions of possible occupations for Mr. Rutledge were ridiculous, do not render UNUM's decision arbitrary and capricious.

First, Mr. Rutledge claims the decision was arbitrary and capricious because he was not physically examined by an UNUM doctor, citing two cases in support. Both of the cases cited, *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433 (3rd Cir. 1997), and *Sansavara v. E.I. Dupont de*

11

*Nemours*, 859 F. Supp. 106 (S.D.N.Y. 1994), involve mental conditions that are difficult to diagnose. Mr. Rutledge makes no assertion that the heart conditions he suffers from are difficult to diagnose, so these cases are not applicable here. In addition, UNUM reviewed his medical records.

UNUM conducted multiple reviews of Mr. Rutledge's medical records. Dr. Costas Labrew, an UNUM doctor, twice reviewed Mr. Rutledge's records. In the first review by Dr. Lambrew, his report indicates he reviewed: (1) a Social Security benefits denial letter dated June 22, 2001 denying disability benefits based on a similar definition to the policy's definition of "disability" (UACL00102-104); (2) notes of Mr. Rutledge's cardiologist, Dr. Maraboyina, dated May 2, 2000 (UACL00085-86), June 12, 2000 (UACL00094), October 16, 2000 (UACL00095) and February 14, 2001 (UACL00096); and (3) an ECG dated February 14, 2000 (UACL00098). (UACL00109).

In the second review of Mr. Rutledge's records performed on September 21, 2001, Dr. Lambrew reviewed Dr. Maraboyina's medical review dated July 17, 2001 (UACL00109), office visit note dated August 2, 2001 (UACL00160-161), letter dated August 30, 2001 (UACL00169), and a pharmacologic stress perfusion imaging study dated August 22, 2001 (UACL00171); (UACL00173, UACL00182). Based on Dr. Lambrew's review of the records, Dr. Lambrew determined Mr. Rutledge had not proven his condition was severe enough to prevent him from working in any gainful occupation.

UNUM also asked GENEX to perform a Transferable Skills Analysis ("TSA") on September 26, 2001 and concluded he had capacity to do sedentary or light level work. (UACL00181, UACL00183-193). UNUM underwent a thorough review of the information Mr.

Rutledge provided it.  Mr. Rutledge provided no additional information for his appeal; so, UNUM based its denial of Mr. Rutledge's appeals on the same information as for the original claim.  UNUM's thorough review and analysis reveals their decision to deny benefits was not arbitrary and capricious even without an actual physical examination of Mr. Rutledge.

Second, Mr. Rutledge suggests Ms. Oliver's statement, stating it may be possible for Mr. Rutledge to perform sedentary work "at change in definition" with medical management, proves the decision was arbitrary and capricious.  (UACL00045).  As UNUM points out, this is not a conclusory statement, it merely points out the possibility of return to light work if his condition improves.  This statement does not prove UNUM's decision was arbitrary and capricious.

Third, Mr. Rutledge argues, referring to positions on the list UNUM provided of possible job occupations, it is ridiculous for UNUM to suggest that he can work as a clerk or a door to door salesman.  Mr. Rutledge bases this argument on a box on the initial form submitted by Plaintiff's doctor.  (UACL00003).  No other evidence, medical or otherwise, exists in the administrative record indicating Mr. Rutledge cannot handle "*any* stress" or any "interpersonal relations."  In fact, some evidence shows he could handle these situations.  On the same form, Dr. Maraboyina checked another box stating Mr. Rutledge was "capable of clerical/administrative (sedentary*) activity."  (UACL00003).  Also, Dr. Maraboyina stated in March of 2001 that Mr. Rutledge needed one month off work.  (UACL00019).  Further, Mr. Rutledge's doctor wrote, in October 2000, Mr. Rutledge would "learn to live with" his condition.  (UACL00095).  The evidence that Mr. Rutledge cannot handle "*any* stress" or any "interpersonal relations" is conflicting or at least ambiguous.   The policy vests the plan administrator with discretion to make benefit decisions.  (UACL00404).  With this discretion and after weighing

13

this evidence, the administrator of UNUM's policy could have rationally concluded Mr. Rutledge could handle some stress and relationships with other people enabling him to do sedentary or light work. Based on the evidence presented to UNUM at the time of the claim, UNUM did not make an arbitrary or capricious decision to deny Mr. Rutledge's long-term disability benefits in this case.

**VII.    CONCLUSION**

Having reviewed UNUM's decision to deny Mr. Rutledge's claim for benefits, the Court finds that the Defendant did not act arbitrarily and capriciously in denying long-term disability benefits to the Plaintiff. Accordingly, the Court awards judgment based on the administrative record to Defendant, Doc. 11, and denies the Plaintiff's request for judgment based on the administrative record, Doc. 15.

The captioned cause is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

DONE and ORDERED in Dayton, Ohio, Thursday, November 17, 2005.[5]


                                    s/Thomas M. Rose
                                    _____
                                    JUDGE THOMAS M. ROSE
                                    UNITED STATES DISTRICT COURT


---

[5] The Court acknowledges the valuable contribution and assistance of judicial intern Kenneth Scott Newman in drafting this opinion.